**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

|  |  |  |
|---|---|---|
| | ) | |
| **TERRESA ROBERTS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 01-2113-CM** |
| | ) | **Consolidated with 02-2536-CM** |
| | ) | |
| **ART KORN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

A jury trial on plaintiffs' claims against defendants Art Korn and Stephen Summers was held on May 9-12, 2005 in this court. The jury found for plaintiffs and against both defendants Korn and Summers and awarded plaintiffs punitive damages.[1] This matter comes before the court on defendant Stephen Summers' Motion to Alter or Amend Judgment (Doc. 295), plaintiffs' Motion to Alter or Amend Judgment (Doc. 296), and plaintiffs' Motion for Awards of Attorney's Fees (Doc. 297).

**I.      Motions to Alter or Amend**

      **A.      Defendant Summers' Motion to Alter or Amend**

Defendant Summers has moved to alter or amend the court's May 12, 2005 Judgment with regard to the actual damages against him. Defendant contends that he is jointly and severally liable for the actual damages, and thus the amount of actual damages he owes plaintiffs should be reduced by the amounts paid

_____

[1] The parties stipulated to the amount of actual damages suffered by each of the plaintiffs, which was reflected in Instruction No. 14 to the jury.

by other defendants.  Defendant Summers specifically claims that he is entitled to a credit for the amounts

that defendants Shawnee Mission Ford and James Nance paid to plaintiffs.  Defendant Summers contends

that if those amounts are considered, plaintiffs are not entitled to any recovery from him.  Plaintiffs oppose

defendant Summers' motion, claiming that defendant Summers' assertion of "satisfaction or payment or

setoff" are affirmative defenses that defendant Summers waived by failing to plead them or raise during the

drafting of the pretrial order in this case.  Plaintiffs also contend that defendant Summers has provided no

facts or evidence to support his assertion of what amounts were paid to plaintiffs or that the amounts were in

payment for plaintiffs' actual damages.  Finally, plaintiffs contend that the case law defendant Summers

asserted in support of his motion to alter, primarily *Haynes v. Manning*, 717 F. Supp. 730 (D. Kan. 1989),

and the appeal of that case, *Haynes v. Manning*, 917 F.2d 450 (10th Cir. 1990), actually support a

"separate and individual liability" rule under the federal odometer law and not joint and several liability.

With regard to defendant Summers' arguments, the court finds that defendant Summers failed to

plead any affirmative defense, as is required pursuant to Fed. R. Civ. P. 8(c), contending that plaintiffs had

been fully compensated by other defendants.  "In pleading to a preceding pleading, a party shall set forth

affirmatively accord and satisfaction . . . contributory negligence . . . payment, release, . . . and any other

matter constituting an avoidance or affirmative defense."  *Id.*  "The policy behind Rule 8(c) is to put plaintiff

on notice well in advance of trial that defendant intends to present a defense."  *Clayman v. Starwood*

*Hotels & Resorts Worldwide*, 343 F. Supp. 2d 1037, 1044 (D. Kan. 2004) (citing *Hardin v. Manitowoc-*

*Forsythe Corp.*, 691 F.2d 449, 458 (10th Cir. 1982)).  In this case, the court finds that defendant Summers

waived this defense by failing to raise it until after the conclusion of the jury trial of this matter.

Even if the court found that defendant Summers had not waived the defense, the court finds defendant Summers' arguments unpersuasive. As plaintiffs have pointed out, defendant Summers has provided the court with no facts or evidence to demonstrate the exact amounts that defendants Shawnee Mission Ford and James Nance paid to each of the plaintiffs or whether such amounts were paid in satisfaction of plaintiffs' actual damages on their federal odometer claims. Moreover, the court finds that the Tenth Circuit case, *Haynes v. Manning*, implicitly supports separate and individual liability under federal odometer law. 917 F.2d at 454 (citing *Alley v. Chrysler Credit Corp.*, 767 F.2d 138, 141-42 (5th Cir. 1985) and *Stier v. Park Pontiac, Inc.*, 391 F. Supp. 397, 401 (S. D. W. Va. 1975), both of which found that each violation of federal odometer law is a separate transaction and each issuer of odometer statements is subject to separate and individual liability thereunder).[2] As a result, the court denies defendant Summers' Motion to Alter or Amend Judgment (Doc. 295).

### B.        Plaintiffs' Motion to Alter or Amend

Plaintiffs have moved to amend the court's May 12, 2005 Judgment to treble the actual damages awarded to plaintiffs on their federal odometer claims, pursuant to 49 U.S.C. § 32710, and to award plaintiffs their attorney fees pursuant to 49 U.S.C. § 32710, with such fees to be determined by a separate motion. Plaintiffs also request inclusion in the judgment of an award of prejudgment interest for each of the plaintiffs for the period between the sales of the vehicles and the date of judgment. In response to plaintiffs'

---

[2] In the *Alley* case, that court further quoted *Mataya v. Behm Motors, Inc.*, 409 F. Supp. 65, 70 (E. D. Wis. 1976) as follows: "'the law is that each person violating the Act is separately subject to liability. . . . [I]f a defendant has actual knowledge of the alteration, he will be separately and individually liable to the plaintiff and is without recourse to recovery from other defendants. The purposes of the statute are advanced by imposing separate and individual liability on each person violating the Act.'" 767 F.2d at 141-42.

motion to amend, defendant Summers[3] reiterates his argument that he is entitled to credit for the amounts paid by other defendants in the case.  Defendant Summers also argues that the jury did not find him liable for odometer roll back or conspiracy to evade dealer licensing laws, and thus, he is not liable for any of plaintiffs' odometer rollback claims or attorney fees pursuant to 49 U.S.C. § 32710.

The court first finds that trebling of the actual damages awarded to plaintiffs on their federal odometer claims is proper pursuant to 49 U.S.C. § 32710(a), which provides that: "A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $1,500, whichever is greater."  Moreover, the jury found defendant Summers liable to all of the plaintiffs, as part of a partnership or joint venture with defendant Korn, for all of defendant Korn's misconduct, for which defendant Korn also admitted liability.  Defendant Korn's misconduct included his "fraud, conspiracy, and violations of federal odometer law and breaches of implied warranties."  *See* Jury Instruction No. 10; Verdict Form.  Accordingly, trebling of the actual damages on plaintiffs' federal odometer claims for which defendant Summers is liable is appropriate pursuant to 49 U.S.C. § 32710(a).

The court next finds that plaintiffs are entitled to recover their attorney fees pursuant to 49 U.S.C. § 32710(b) from both defendants Korn and Summers.  The court addresses plaintiffs' request for the specific amount of attorney fees below.

The court further finds that an award of prejudgment interest to plaintiffs for the period between the sales of the vehicles and the date of judgment is appropriate.  This case was filed five years ago.  The prejudgment interest is appropriate to compensate plaintiffs for their losses over the time spent recovering the losses, separate and apart from the actual damages and punitive damages they have been awarded by

---

[3] Defendant Korn did not respond to any of the post trial motions.

-4-

the jury. *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1288-89 (10th Cir. 1998) ("'Under federal law, the rationale underlying an award of prejudgment interest is to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of [the] judgment.'" (quoting *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1256 (10th Cir. 1988)). Moreover, in a case such as this where the jury found defendants liable for fraudulent and dishonest conduct, the equities do not preclude such an award. *Id.* at 1289. Accordingly, the court grants plaintiffs' Motion to Alter or Amend Judgment (Doc. 296) in its entirety.

## II.     Motion for Attorney Fees

Plaintiffs have moved, pursuant to Fed. R. Civ. P. 54(d)(2) and Local Rule 54.2 for an award of attorney fees against defendants Korn and Summers under 49 U.S.C. § 32710(b) of the federal odometer statutes and 15 U.S.C. § 2310(d), the Magnuson-Moss Warranty Act. Plaintiffs contend that an award of attorney fees is mandated by statute pursuant to 49 U.S.C. § 32710(b), and is discretionary under the Magnuson-Moss Warranty Act. Plaintiffs attached a statement of consultation between the parties, affidavits from plaintiffs' counsel and other experts supporting the rates used and the time expended on the case, and plaintiffs' counsel's time entries for the case.

### A.     Standard

The court follows a two-step process to determine an award of reasonable attorney fees and expenses. The initial estimate is calculated by multiplying the number of hours reasonably expended by a reasonable hourly fee, resulting in the "lodestar" amount. *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court may then adjust upward or downward from the lodestar as necessary. *Blum*, 465 U.S. at 888.

The party moving for attorney fees "bears the burden of . . . documenting the appropriate hours expended and the hourly rate." *Case v. Unified Sch. Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998). To satisfy its burden, therefore, the party must submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Id*. at 1250 (citing *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)). "The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998). The court will reduce the hours claimed if the attorneys' records are inadequate or fail to precisely document the time necessary to complete specific tasks. *Hensley*, 461 U.S. at 433-34; *Case*, 157 F.3d at 1250.

### B.      Plaintiffs' Lodestar Calculations

Plaintiffs separated the time period for the fees claimed into five different groups:

1) from the beginning of the litigation through the end of May 2002, when the offers of judgment from Shawnee Mission Ford were accepted by plaintiffs Roberts and Penn; plaintiffs propose that defendants Korn and Summers would be liable for 50% of the attorney fees up to that point;

2) from June 1, 2002 through the time of the settlement between Shawnee Mission Ford and plaintiff Dowdall (March 18, 2004); plaintiffs propose that defendants Korn and Summers would be liable for 40% of the attorney fees;

3)  from March 19, 2004 through the time of the Dowdall settlement with the Ervins (October 29, 2004); plaintiffs propose that defendants Korn and Summers would be liable for 50% of the attorney fees;

4) from October 30, 2004 through the time of plaintiffs' settlement with Nance (reached in principle February 25, 2005); plaintiffs propose that defendants Korn and Summers would be liable for 2/3 of the attorney fees;

5) from February 26, 2005 through the present, plaintiff propose that defendants Korn and Summers would be liable for all attorney fees.

Plaintiffs further propose that any fee award be divided among them as follows: 1) through the end of May 2002, it would be divided equally between plaintiffs Roberts and Penn; and 2) from the beginning of June 2002 (when counsel began work for plaintiff Dowdall) it would be divided in three equal parts among the plaintiffs.

Using the lodestar method, plaintiffs claim a total of $136,391.79 in attorney fees from defendants Korn and Summers.  Plaintiffs propose a $275 hourly rate for lead attorney Bernard Brown (BB), a $150 hourly rate for attorney James Rynard (JR), a $110 hourly rate for attorneys Andrew Apathy (AA) and Jill Kingsbury (JK), and a $50 per hour rate for each of the paralegals (Janna Wright (JLW), Mary Pat Shelledy (MP), Loriann Lucier (LL) and Leslie Holtz (LH)) who worked on the case.  Plaintiffs reached the lodestar amount using the following calculations:

Totals For Time Before June 1, 2002:

| | |
|---|---|
| BB ($275 x 264.4 hours): | $72,710.00 |
| AA ($110 x 8.2 hours): | $902.00 |
| JR ($150 x 117.3 hours): | $17,595.00 |
| JLW ($50 x 3.3 hours): | $165.00 |
| MP ($50 x 54.6 hours): | $2,730.00 |
| LL ($50 x 9.5 hours):   $475.00 | |
| JM[4]: | $40.00 |
| JV: | $120.00 |
| TOTAL: | $94,737.00; **50% - Korn/Summers = $47,368.50** |

---

[4] The court found no reference in plaintiffs' submissions to the identity of either JM or JV.

Totals for June 1, 2002 - March 18, 2004:

      BB ($275 x 145 hours):      $39, 875.00

      AA ($110 x 15.6 hours):      $1,716.00

      JR ($150 x 40.9 hours):      $6,390.00[5]

      JK ($110 x 1.7 hours):      $187.00

      MP ($50 x 10.8 hours):      $1,540.00[6]

      LL ($50 x 35.1 hours):      $1,755.00

      LH ($50 x 18.4 hours):      $920.00

      TOTAL:      $52,353.00; **40 % - Korn/Summers = $20,941.20**

Totals for March 19, 2004 - October 29, 2004:

      BB ($275 x 22.3 hours):      $6,132.50

      LL ($50 x 1.2 hours):   $60.00

      TOTAL:      $3,192.50; **50% - Korn/Summers = $1,596.25**

Totals for October 30, 2004 - February 25, 2005:

      BB ($275 x 52.6 hours):      $14,465.00

      LL ($50 x 2.4 hours):   $120.00

      TOTAL:      $14,585.00; **2/3 - Korn/Summers = $9,723.34**

Totals for February 26, 2005 - Present:

      BB ($275 x 196.1 hours):      $53,927.50

---

[5] Based on the court's calculations, this figure should total $6,135.00.

[6] Based on the court's calculations, this figure should total $540.00.

LL ($50 x 56.7 hours):        $2,835.00

TOTAL:               **$56,762.50   Korn/Summers (100%)**

Plaintiffs apportioned the amounts as follows:

Roberts:  One-half of pre-June 1, 2002 amounts ($23,684.25) +
1/3 of post-June 1, 2002 amounts ($29,674.43) =     **$53,358.68**

Penn:  One-half of pre-June 1, 2002 amounts ($23,684.25) +
1/3 of post-June 1, 2002 amounts ($29,674.43) =     **$53,358.68**

Dowdall:  1/3 of post-June 1, 2002 amounts =        **$29,674.43**

### C.    Defendant Summers' Objections

Defendant Summers objects to plaintiffs' request for attorney fees, repeating arguments from his

Motion to Alter or Amend, which the court has denied, and requesting careful evidentiary scrutiny of

plaintiffs' submission.  Defendant Summers specifically contends that (1) he should be liable for one-fourth

of the fees, not one-half in conjunction with defendant Korn; (2) more than half of plaintiffs' counsel's time

was spent on other defendants, and reductions should be made for time spent on failed claims and issues;

(3) the result obtained is not truly successful with regard to defendant Summers because he was entitled to

take retirement from his thirty years of employment with General Motors on January 1, 2006, and he

allegedly will be unable to pay the fees after his retirement; and (4) the hourly rate claimed for plaintiffs'

counsel and the time expenditure on the case were unreasonable.  Defendant Summers urges the court to

determine a fair and reasonable fee assessment for him alone, separate from defendant Korn, and less than

what plaintiffs have claimed.

### D.    Analysis

Overall, the court notes that, other than pointing out four time entries with which defendant Summers takes specific issue, defendant Summers makes no specific objections to the claimed fees or any suggestion of an appropriate fee amount for the litigation over the five years of this case and contained in sixty-five pages of detailed records submitted by plaintiffs.  While defendant Summers primarily presents derogatory comments regarding plaintiffs' counsel's handling of the case, he presents no evidence and sparse case law in support of his position that the fees should be allocated differently and the overall rates and total amount of fees reduced.

Moreover, as plaintiffs pointed out, and this court experienced in dealing with the parties throughout the litigation of this case, defendant Summers vigorously defended this case, and maintained, up until the time the jury reached its verdict, that plaintiffs would not prevail on their claims against him.  "An aggressive litigation strategy carries with it certain risks, one of which is that a party pursuing an aggressive strategy may, if it loses, find itself required to bear a portion of the attorneys' fees incurred by the other party in responding to that aggressiveness."  *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1260 (10th Cir. 2005).

### 1.     Defendant Summers' Overall Liability for the Fees

Defendant Summers contends that his liability for plaintiffs' attorney fees should be considered as only one-fourth, and not one-half in conjunction with defendant Korn.  Defendant Summers points out that the jury found that he and defendant Korn were not engaged in a conspiracy, and his responsibility for the attorney fees should be considered separately from defendant Korn's.

Plaintiffs contend that the formula they used to reach defendant Summers' liability is fair, and that under *City of Riverside v. Rivera*, 477 U.S. 561 (1986), defendant Summers and Korn could be held

liable for all of plaintiffs' attorney fees for their work against all of the defendants, including those defendants who were dismissed.  Plaintiffs further contend that the joint liability of defendants Summers and Korn is appropriate where defendants had a partnership relationship and the jury found that defendant Summers was liable for defendant Korn's conduct.  The court agrees and overrules defendant Summers' objection on this basis.

### 2.      Time Spent on Other Defendants and on Failed Claims and Issues

Defendant Summers claims that the allocation of forty and fifty percent of plaintiffs' attorney fees to him prior to plaintiffs' settlement with Shawnee Mission Ford is unfair.  Defendant Summers contends that, up until the time plaintiffs settled their claims with Shawnee Mission Ford, plaintiffs spent the majority of the time dealing with Shawnee Mission Ford's attorneys.  Defendant Summers points to only one time entry that he claims supports his point on this issue.  Defendant Summers contends that far more than fifty percent of plaintiffs' counsel's time was spent on other defendants and issues separate from the claims against him. Defendant Summers further contends that time spent on failed claims and issues must be removed. However, other than stating that any time spent on another party that was dropped from the lawsuit (the Ervins) must be removed, defendant provides no detailed argument on this issue.

Plaintiffs contend that defendant Summers was as integrally involved in the claims as the other defendants, including Shawnee Mission Ford, and that plaintiffs originally claimed that Shawnee Mission Ford, Korn, Summers and Nance were engaged in a conspiracy surrounding the odometer fraud.  Thus, plaintiffs contend that work on claims against all of the defendants was integral to plaintiffs' development of their case against defendant Summers.  Plaintiffs note that the time spent on the Ervins has been removed

-11-

from the lodestar calculation, and defendant Summers could be held liable for their work against all of the

defendants, including those defendants who were dismissed or claims that were not successful.

Defendant Summers' argument ignores the significant case law cited by plaintiffs in support of the

fact that, where all of plaintiffs' claims are related and intertwined, the court need not separate attorney fees

for each claim. *See Williams v. Finance Plaza, Inc.*, 78 S.W.3d 175, 185-87 (Mo. App. 2002) (citing

*York v. InTrust Bank, N.A.*, 962 P.2d 405, 430 (Kan. 1998); *Duchscherer v. W.W. Wallwork, Inc.*, 534

N.W.2d 13, 19 (N. Dak. 1995); *DeSpiegelaere v. Killion*, 947 P.2d 1039, 1044-45 (Kan. App. 1997);

*Majcher v. Laurel Motors, Inc.*, 680 N.E.2d 416, 430 (Ill. App. 1997)).  As the Tenth Circuit stated in

*Jane L. v. Bangerter*:

> If claims are related, failure on some claims should not preclude full recovery
> if plaintiff achieves success on a significant, interrelated claim. "Where a
> lawsuit consists of related claims, a plaintiff who has won substantial relief
> should not have his attorney's fee reduced simply because the district court
> did not adopt each contention raised." *Hensley*, 461 U.S. at 440; *see also*
> *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1160 (10th Cir. 1990).  A claim
> is related to another claim if it is based on "a common core of facts."
> *Hensley*, 461 U.S. at 435.  We have refused to permit the reduction of an
> attorneys fee request if successful and unsuccessful claims are based on a
> "common core of facts." In *Tidwell v. Fort Howard Corp.*, 989 F.2d 406,
> 412-13 (10th Cir. 1993), for example, we held that the trial court abused its
> discretion in reducing attorneys fees for a plaintiff who prevailed under some
> provisions of the Equal Pay Act but failed on her Title VII and state law
> claims.

61 F.3d 1505, 1512 (10th Cir. 1995); *see also Dill v. City of Edmond*, 72 Fed. Appx. 753, 757 (10th Cir.

2003) (similar holding citing to *Bangerter* decision).

The court finds that plaintiffs' claims against all of the defendants, which centered on the fraud

through the odometer rollbacks, were all related and arose from the same core facts.  Plaintiffs achieved a

-12-

great deal of success on their claims, both through settlements with other defendants and their favorable jury

verdict against defendants Summers and Korn.  Defendant Summers' objection on this basis is overruled.

### 3.       Success Against Defendant Summers

Defendant Summers contends that if plaintiffs had gone to trial on this case in October 2002,

plaintiffs could have garnished defendant Summers' wages from General Motors, where defendant Summers

has been employed for thirty years.  Defendant Summers essentially argues that, because he was entitled to

take retirement from General Motors as of January 1, 2006, he now will be unable to pay any amounts to

plaintiffs.

Defendant Summers' argument on this issue ignores the fact that plaintiffs were successful in their

claims against him.  Success on plaintiffs' claims is not measured by a defendant's ability to pay the attorney

fees incurred.  Rather, "the critical factor is whether the plaintiff achieved the principal goals of the lawsuit. . .

."  *Dill*, 72 Fed. Appx. 753 at 757.  Defendant Summers' objection on this basis is overruled.

### 4.       Reasonableness of the Hourly Rate and the Hours Expended

Defendant Summers contends that an hourly rate of $275 per hour for lead counsel and the more

than 600 hours claimed as trial preparation are unreasonable.  Defendant Summers points to three time

entries in support of his arguments on this issue and contends that plaintiffs' counsel's preparation for trial

was excessive when the evidence in the case lasted only two days.

Plaintiffs point to the evidence that they submitted in support of the $275 hourly rate charged for Mr.

Brown, including the affidavits from others in the industry.  Plaintiffs also point out that, on the eve of trial,

they obtained significant stipulations from both defendant Summers and Korn regarding actual damages

suffered by plaintiffs and on the admission of voluminous documentary evidence.  Plaintiffs contend that they

-13-

had spent a considerable amount of time preparing for fact and expert testimony on those issues prior to trial.  Plaintiffs contend that the stipulations removed the need to present as much complex evidence and made the trial more efficient, even though plaintiffs had to prepare for trial as if such evidence would be necessary.

The court's determination of whether the attorney's hourly rate is reasonable requires the attorneys "to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11.  In addition, "a district judge may turn to [his or her] own knowledge of prevailing market rates as well as other indicia of a reasonable market rate." *Bee v. Greaves*, 910 F.2d 686, 689 n.4 (10th Cir. 1990).

The court finds, based on the evidence submitted by plaintiffs as well as the court's own knowledge of prevailing rates charged by attorneys in the Kansas City area, that Mr. Brown's $275 hourly rate is reasonable based on his professional skills, experience, and reputation, particularly with regard to this type of litigation.  Moreover, as plaintiffs have pointed out, plaintiffs' counsel has not charged for large amounts of time spent on the case in reaching the hours component of the lodestar calculation.  Having considered the evidence submitted on this issue and the parties' arguments, the court overrules defendant Summers' objection on this basis.

The court finds that plaintiffs' lodestar calculations are reasonable, well-documented, and accurately reflect the success of the plaintiffs in this case.  Accordingly, the court grants plaintiffs' motion for their attorney fees.  However, with respect to the total amount of fees claimed by plaintiffs, $136,391.79, the

-14-

court reduces the total amount by $1,415.00 to account for the minor miscalculations and discrepancies in plaintiffs' lodestar calculations.[7]

## III.    Orders

**IT IS THEREFORE ORDERED** that defendant Stephen Summers' Motion to Alter or Amend Judgment (Doc. 295) is denied.

**IT IS FURTHER ORDERED** that plaintiffs' Motion to Alter or Amend Judgment (Doc. 296) is granted in its entirety as set forth above.

**IT IS FURTHER ORDERED** that plaintiffs' Motion for Awards of Attorney's Fees (Doc. 297) is granted as set forth above. **Plaintiffs are hereby awarded a total of $134,976.79 in attorney fees from defendants Korn and Summers.**

**IT IS FURTHER ORDERED** that plaintiffs submit to the court a revised amended judgment reflecting the court's rulings on plaintiffs' Motion to Alter or Amend Judgment and plaintiffs' Motion for Awards of Attorney's Fees, **within 10 days of the date of this Order**.

**SO ORDERED.**

Dated this 1st day of March 2006, at Kansas City, Kansas.


**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**

---

[7] The court has not included the amounts for time spent by JM and JV ($160.00 total). The court also has deducted $1255.00 to account for the differences in the calculations on the amounts for JR and MP during the June 1, 2002 - March 18, 2004 period.